Filed 11/29/17

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| CASSIDY OLSON, | B272340 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. YC070160) |
| v. | |
| MANHATTAN BEACH UNIFIED SCHOOL DISTRICT et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Ramona See, Judge. Affirmed.

Law Offices of Ching & Associates, and Ernest F. Ching, Jr. for Plaintiff and Appellant.

McCune & Harber, Dana John McCune and Steven H. Taylor for Defendants and Respondents.

_____

## INTRODUCTION

Appellant Cassidy Olson appeals from a judgment dismissing his second amended complaint (SAC) against respondents Manhattan Beach Unified School District (MBUSD) and Michael Matthews, Ed. D.  The trial court entered the dismissal order after sustaining MBUSD's demurrer to the SAC on the ground that appellant's grievance, filed pursuant to a collective bargaining agreement, did not satisfy the claim filing requirements of the Government Claims Act (Gov. Code, § 810 et seq.).  Appellant contends his noncompliance was excused under the doctrines of substantial compliance, "claim as presented," and futility.  For the reasons set forth below, we reject his contentions.  Accordingly, we affirm.[1]

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

### A.    *Appellant's Complaint*

On August 27, 2015, appellant filed an SAC for damages alleging causes of action for defamation and deceit against MBUSD and its employee, MBUSD Superintendent Matthews.  The SAC alleged that appellant was an MBUSD employee who served as a history teacher and head baseball coach for Mira Costa High School.  In September 2012, an attorney representing parents of some players on the Mira Costa baseball team filed a

---

[1]    The defense of noncompliance with the Government Claims Act also applies to the claims against Matthews.  (See Gov. Code, § 950.2 ["a cause of action against a public employee or former public employee for injury resulting from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred . . . ."].)

2

complaint with MBUSD about appellant's alleged "'abusive behavior, intimidating tactics, bullying and hazing of [players] and . . . conspicuous disregard for [player] safety and welfare.'" MBUSD investigated the allegations. At the conclusion of the investigation, on December 1, 2012, the investigators prepared a report summarizing the results.[2]

The investigative report included both positive and negative comments about appellant's behavior. While some players admired and respected appellant, others felt he was too hard on them, shouted too often and created a "culture of fear." The report included quotes from three players. One player stated: "'There are some players who are out to get Olson. They are making stuff up. They're a little lazy and coaches want them to work harder.'" Another stated, "'I have a lot of respect for Coach Olson. Best 3 years of baseball.'" The third player stated: "'It's like he's a dictator. Can't say anything to him (Olson) or will be punished.'" A parent who accused appellant of abuse and illegal behavior commented that "'we're not after [Olson's] teaching position -- we just want him removed as baseball coach.'" With respect to the abuse allegations, the report noted: "None of the players were able to accurately represent any instances of [a]buse in either a verbal, emotional, mental or physical form by Coach Olson or any of the other coaches. Most of the players stated that there was either no abuse or that they had not witnessed it for themselves. [¶] The few players who believed abuse had occurred described some situations where Coach Olson shouted at them or another player when he was angry or that he left them on the bench . . . ." It concluded: "The

---

[2]     This report was attached to the SAC.

3

claims of abuse are unfounded based on the statements by the sixty-nine [players] who were interviewed." The report recommended that appellant be retained as the baseball coach and counseled on his "coaching expectations upon his return to Mira Costa Baseball." "The focus will be on adjusting Coach Olson's demeanor around the players . . . [including] on the ways in which he reacts to negatives associated with player and team performance."

On December 6, 2012, Matthews allegedly rewrote the report. The revised report omitted the investigators' recommendation and some favorable comments.[3] On December 12, 2012, MBUSD prohibited appellant from attending baseball games or practices or having contact with players after 3:00 p.m. until March 25, 2013. On December 17, 2012, the Mira Costa High School Principal, Ben Dale, Ed. D., sent a letter to the complainants' attorney stating, "'the evidence did not support a finding of physical, mental or emotional abuse.'"

In late January 2013, local media outlets reported that appellant was being accused of mistreating baseball players.

---

[3] The revised report also was attached as an exhibit to the SAC. It did not include the quotes from the three players (two favorable, one adverse) or the comment from one of the complaining parents that they were seeking only to have him removed as baseball coach. Nor did it include the investigators' recommendation to retain appellant and counsel him on his demeanor and coaching expectations. However, the report retained the observation that no player was able to "accurately represent any instances of abuse," and that "[m]ost of the players stated that there was either no abuse or that they had not witnessed it." The revised report also retained the conclusion that "claims of abuse are unfounded."

4

MBUSD did not refute the story or offer any contrary information. On February 25, 2013, appellant, through his union, Manhattan Beach Unified Teachers' Association (MBUTA), requested that MBUSD make the original report available under the Public Records Act, as he intended to use it to refute the media reports. MBUSD allegedly denied that the report existed.[4]

On March 4, 2013, the attorney for the complaining parents filed a complaint with the commission on teacher credentialing (CTC), asserting that MBUSD had not disciplined appellant properly and that he should be dismissed for "'unprofessional conduct, dishonesty, unsatisfactory performance, unfitness for service and persistent disobedience and refusal to obey school laws and regulations.'" The CTC initiated an investigation into appellant's conduct, and requested that MBUSD forward "'any and all documents' related to Olson" for its review. On behalf of MBUSD, Matthews forwarded appellant's file and included the rewritten report instead of the original one. On October 12, 2013, appellant discovered that MBUSD had sent the rewritten report to CTC. On December 3, 2013, the CTC recommended that appellant's teaching certificate be suspended for 30 days. On January 2, 2014, appellant requested reconsideration, and on January 31, the CTC reaffirmed its decision.

The SAC asserted that MBUSD's revision of the investigators' report and its production of the revised report to CTC constituted defamation and deceit. He alleged that the

---

[4]     Twenty-two months later, in response to discovery in the instant action, MBUSD provided a copy of the original report to appellant.

5

"omitted portions of the investigative report provided necessary context to refute the charges that OLSON had mistreated players." The rewritten report "cast [appellant] in a negative light" and resulted in "harm and injury to OLSON's business, professional, and personal reputation." Appellant alleged that had the original report been submitted to CTC, "CTC would have taken no action against his credential and that he would have been able to continue teaching History and coaching baseball without any interruption." Appellant further alleged that defendants engaged in deceit by "suppressing" the original report. Appellant sought general damages and special damages according to proof.

In a separate section of the SAC addressing compliance with the claim presentation requirements of the Government Claims Act, appellant alleged that the filing of a grievance against MBUSD constituted substantial compliance with the requirements of the Act. Alternatively, appellant contended that he should be excused from filing a claim with MBUSD, as it would have been futile to do so. The SAC noted that appellant had filed a grievance with MBUSD and arbitration on it was pending.

As to the grievance, the SAC alleged that in accordance with the collective bargaining agreement (CBA) between MBUTA and MBUSD, on March 15, 2014, appellant filed a grievance alleging "violations of the CBA." In the grievance, attached as Exhibit E to the SAC, appellant stated that the alleged grievance occurred on February 5, 2014. The grievance is described as follows: "The Commission on Teacher Credentialing has taken steps to unfairly discipline me based on faulty information from a non-contractual evaluation. . . . Mira Costa Principal Dr. Ben

6

Dale erroneously allowed parents, students, the Athletic Director (a bargaining unit member) and anonymous members of the community to unfairly evaluate my performance on the baseball field. These procedures had a detrimental impact on my employment as a social studies teacher and were used to create a false report of my teaching and coaching practice. Evaluative data coerced from parents, current and former students and other anonymous individuals in this manner is at odds with the evaluative process prescribed in the [CBA] between MBUSD and MBUTA. Because of the District's adoption of the non-contractual evaluation procedures, the parents used the tainted data gathered to malign me to the CTC which is now withholding the renewal of my credential and has issued an intent to suspend me for 30 days. I have suffered the loss of 6 months' salary and benefits as well as the loss of my good name and reputation." As remedies for MBUSD's contractual violations, Olson sought (1) a "letter from the MBUSD clearing me of any wrongdoing in my duties as a social studies teacher and as a 6th period baseball teacher," and (2) assignment to "a temporary paid position which does not require a teaching credential while I appeal my case with the CTC."

The SAC further alleged that in August 2014, appellant met informally with Matthews to discuss a settlement. As part of the settlement, appellant requested the MBUSD write a letter to CTC clearing appellant of any wrongdoing. When Matthews refused, appellant responded "'this is why I have to keep fighting this.'" At the time appellant filed his initial complaint in the instant action (October 10, 2014), the final determination of appellant's grievance was pending an arbitration hearing.

7

B.     *MBUSD's Demurrer*

MBUSD demurred to the SAC on the ground, among others, that the SAC was devoid of any facts showing that appellant had complied with or was excused from complying with the claim presentation requirements of the Government Claims Act.  MBUSD argued that the doctrine of substantial compliance was inapplicable because that doctrine applies only where a claimant attempted to file a claim, but the attempt failed in some technical manner.  Here, the SAC did not allege that appellant attempted to file a claim.  Rather, it alleged that he filed a grievance, an entirely different document.

MBUSD further argued that the grievance was not a "'claim as presented,'" which could have saved appellant from his noncompliance with the Government Claims Act.  Under that doctrine, a document that is not a claim may constitute a "'claim as presented'" if it provides notice that a claim for monetary damages exists and that litigation may ensue if not satisfied.  MBUSD asserted that the grievance was not a "'claim as presented'" because it "does not request money damages, nor does it threaten actual litigation if the grievance is not favorable to Plaintiff."

Finally, MBUSD argued that the futility doctrine, which may excuse a litigant from exhausting administrative remedies, did not apply.  It noted although Government Code section 905 sets forth exceptions to the claim filing requirement, futility is not listed among those exceptions.  Moreover, to demonstrate futility, a plaintiff must show that the agency declared what its ruling would be on a claim.  The SAC did not allege any facts showing that MBUSD had indicated its predetermined decision to deny any claim appellant might file for damages.

C. *Appellant's Opposition to Demurrer*

Appellant opposed the demurrer, arguing that the filing of the grievance disclosed sufficient information about his claim against MBUSD. He asserted that his request for "restoration of pay and benefits via mitigation by accepting an assignment to [a] temporary position" was a claim for damages. He further asserted that his comment to Matthews at the August 2014 meeting that he would continue to fight constituted notice that he intended to commence litigation.

Appellant further argued that he demonstrated futility because the SAC alleged that his grievance was denied. Additionally, the SAC alleged that MBUSD had multiple occasions to retract or refute unfair and inaccurate statements about appellant, but failed to do so. Thus, appellant asserted, it was clear that his claim against MBUSD would have been denied.

D. *Trial Court's Ruling*

On March 3, 2016, the trial court sustained MBUSD's demurrer to the SAC without leave to amend. Noting that there was no dispute that appellant had not filed a government claim with MBUSD, the court stated that the "only issues are whether the grievance form filed demonstrates 'substantial compliance' with [Government Code] section 910['s] filing requirement, whether the grievance form qualifies as a 'claim as presented,' [and] whether the futility doctrine applies." It ruled that the grievance form did not demonstrate substantial compliance, as it did not put "Defendants . . . on notice of any potential lawsuit or causes of action." Rather, the "grievance form is a separate form used by Defendants and is not merely a technical defect on a

9

government tort claim form." The court further ruled that the grievance form did not qualify as a "'claim as presented,'" as it contained no claim for money damages. Additionally,the court noted, the "grievance form states that Plaintiff is appealing his case with the CTC - suggesting that Plaintiff is pursuing his appeal, not litigation with Defendants." Finally, the court ruled that the futility doctrine was inapplicable, as there were "no facts alleged that a predetermined outcome on Plaintiff's claim had been expressed."

Judgment dismissing the SAC was entered April 8, 2016. Appellant timely appealed.

## DISCUSSION

Appellant contends the trial court erred in sustaining MBUSD's demurrer to the SAC. We review a judgment of dismissal entered after an order sustaining a demurrer de novo. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) "We must take the allegations of the operative complaint as true and consider whether the facts alleged establish [appellant's] claim is barred as a matter of law." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.)

Here, MBUSD demurred to the SAC on the ground that appellant failed to comply with the claim presentation requirements of the Government Claims Act. It is undisputed that appellant never filed a claim with MBUSD on a government claim form. "'[F]ailure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity.' [Citation.]" (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738.) However, appellant argues

10

that he was excused from the claim filing under several legal doctrines.

A. *Substantial Compliance*

First, appellant contends that his filing of a grievance substantially complied with the claim filing requirements. "Under the doctrine of substantial compliance the court may conclude a claim is valid if it substantially complies with all of the statutory requirements for [a] valid claim even though it is technically deficient in one or more particulars." (*Santee v. Santa Clara County Office of Education* (1990) 220 Cal.App.3d 702, 713 (*Santee*).) "The doctrine is based on the premise that substantial compliance fulfills the purpose of the claims statutes, namely, to give the public entity timely notice of the nature of the claim so that it may investigate and settle those having merit without litigation. [Citations.] The doctrine of substantial compliance is normally raised where a timely but deficient claim has been presented to the public entity." (*Ibid.*) However, where there is a complete failure to serve any responsible officer of the entity, the doctrine does not apply. (*Westcon Construction Corp. v. County of Sacramento* (2007) 152 Cal.App.4th 183, 202; see also *Dilts v. Cantua Elementary School Dist.* (1987) 189 Cal.App.3d 27, 33 [doctrine of substantial compliance may be applied where plaintiff filed a defective claim, not where he filed no claim].) Here, the SAC does not allege that appellant served or attempted to serve a claim on any responsible officer of MBUSD. Thus, the doctrine of substantial compliance does not apply.

Even assuming, arguendo, that the grievance could be deemed to constitute a claim, the contents of the grievance do not substantially comply with the requirements of the Government

11

Claims Act. Government Code section 910 enumerates the information that must be included in a government claim. It provides that the claim "shall show all of the following: [¶] (a) The name and post office address of the claimant. [¶] (b) The post office address to which . . . notices [are] to be sent. [¶] (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted. [¶] (d) A general description of the . . . injury, damage or loss incurred . . . . [¶] (e) The name or names of the public employee or employees causing the injury, damage, or loss, if known. [¶] (f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case." (Gov. Code, § 910.)

Appellant's grievance does not contain the address of the claimant, the address where future notices should be sent, the name or names of the public employees who defamed and/or deceived appellant, the dollar amount claimed or whether the claim would be a limited civil case. Moreover, the description of the grievance does not support causes of action for defamation or deceit against MBUSD or its employees. According to the grievance, Principal Dale -- who was not named as a defendant in the SAC -- erroneously permitted parents, students, the athletic director and anonymous members of the community to "unfairly evaluate" appellant's performance as a baseball coach. That

12

"[e]valuative data" was obtained in violation of the CBA. Some "parents [then] used the tainted data gathered to malign [appellant] to the CTC." Those factual allegations might support a breach of contract claim against MBUSD, but they do not support a defamation or deceit claim against MBUSD. In short, the grievance omitted material facts and failed to apprise MBUSD "of the nature of the claim so that it [might] investigate and settle those having merit without litigation." (*Santee, supra*, 220 Cal.App.3d at p. 713.) The doctrine of substantial compliance cannot save such a deficient "claim." (See *Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1083 [plaintiff's letter to public entity demanding reinstatement to former position did not substantially comply with claim filing requirements where letter failed to describe circumstances giving rise to the claimed harm or refer to defendants named in subsequent complaint].)

      B.     "*Claim as Presented*'"

Appellant next contends that the instant matter involved a "'claim as presented.'" "A 'claim as presented' is a claim that is defective in that it fails to comply substantially with Government Code sections 910 and 910.2, but nonetheless puts the public entity on notice that the claimant is attempting to file a valid claim and that litigation will result if it is not paid or otherwise resolved. A 'claim as presented' triggers a duty on the part of the governmental entity to notify the claimant of the defects or omissions in the claim. A failure to notify the claimant of the deficiencies in a 'claim as presented' waives any defense as to its sufficiency." (*Alliance Financial v. City and County of San Francisco* (1998) 64 Cal.App.4th 635, 643.) "[A] document

13

constitutes a 'claim as presented' . . . if it discloses the existence of a 'claim' which, if not satisfactorily resolved, will result in a lawsuit against the entity." (*Phillips v. Desert Hospital Dist.* (1989) 49 Cal.3d 699, 709.)

Here, the grievance is not a "'claim as presented'" because it does not disclose the existence of a claim against MBUSD, which if not satisfactorily resolved, would result in litigation. As noted above, at best, the grievance describes a breach of contract claim involving the "evaluative process," but nowhere does the grievance threaten litigation if the contractual breaches are not remedied. (Compare *Schaefer Dixon Associates v. Santa Ana Watershed Project Authority* (1996) 48 Cal.App.4th 524, 534 [letter to public entity advising of monetary dispute did not constitute "claim as presented," as "the plain import of the letter was merely to provide information and to request negotiation of an ongoing dispute, and not to advise of imminent litigation over a 'claim'"], and *Green v. State Center Community College Dist.* (1995) 34 Cal.App.4th 1348, 1359 [counsel's letter informing public entity that an accident had occurred and counsel had been retained was not a "'claim as presented,'" as nothing in counsel's letter suggested "that a demand was being made on respondent or that counsel would initiate litigation if appellant's demand was not satisfied"], with *Phillips v. Desert Hospital Dist.*, *supra*, 49 Cal.3d at pp. 703, 709 [counsel's letter advising public entity that counsel "intends to commence an action" for medical malpractice and was seeking "damages for loss of consortium and . . . mental and emotional suffering" constituted "claim as presented"].) With respect to defamation or deceit claims, nothing in the grievance suggests appellant was asserting or would assert those claims against MBUSD or its employees. Finally, as to appellant's

14

statement to Matthews that he would continue to fight after the grievance was denied, that statement does not indicate appellant intended to commence litigation. Rather, it suggests he would appeal the denial of the grievance. Indeed, as the SAC alleged, at the time appellant filed his original complaint, the final determination of his grievance was still pending. In short, the grievance was not a "'claim as presented.'"

C. *Futility*

Finally, appellant contends he was excused from filing a government claim because it would have been futile, as it was clear that MBUSD would deny his claim. Futility is a "'narrow exception'" to the doctrine requiring exhaustion of administrative remedies. (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 418; see also *Jonathan Neil & Assoc., Inc. v. Jones* (2004) 33 Cal.4th 917, 936 ["Failure to exhaust administrative remedies is excused if it is clear that exhaustion would be futile."].) We reject appellant's argument.

First, appellant has identified no case applying the futility exception to the claim filing requirement. A "futile" claim is not a claim statutorily excepted from the claim filing requirements. (See Gov. Code, § 905 [listing exceptions].)

Moreover, futility is an exception to exhaustion of administrative remedies, but the claim filing requirement is not an administrative remedy. (See *Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1155 ["The origin and purposes of the government claim filing requirements and the administrative remedies exhaustion doctrine differ, and elimination of the exhaustion requirement does not release a

15

litigant from the need to comply with Government Claims Act requirements."].)

Finally, application of the futility doctrine would contravene the purposes of the claim filing requirement. The purposes of the requirement are (1) to provide the public entity with sufficient information to enable it to adequately investigate and settle claims, and (2) to enable the entity to account for potential liabilities and to avoid similar liabilities in the future. (*City of Stockton v. Superior Court, supra,* 42 Cal.4th at p. 738.) Even a "futile" claim would provide a public entity with notice of a potential claim enabling adequate investigation and fiscal planning.

Even were we to assume the futility doctrine could be applied to excuse noncompliance with the claim filing requirement, the SAC did not allege facts demonstrating futility. (See *Sea & Sage Audubon Society, Inc. v. Planning Com.*, *supra*, 34 Cal.3d at p. 418 [futility exception requires that the party invoking the exception ""positively state that the [agency] has declared what its ruling will be in a particular case"""].) The SAC did not allege that MBUSD positively declared what its ruling would be on any defamation and deceit claims presented to it. Additionally, the denial of the grievance does not assist appellant because, as explained previously, the grievance did not put MBUSD on notice that appellant had defamation and deceit claims against MBUSD and/or its employees.

In sum, the trial court properly sustained MBUSD's demurrer to the SAC on the basis that appellant failed to comply with the requirements of the Government Claims Act and that appellant's noncompliance was not excused.

16

## DISPOSITION

The judgment of dismissal is affirmed.  Respondent is awarded its costs on appeal.

**CERTIFIED FOR PUBLICATION.**


MANELLA, J.


We concur:


EPSTEIN, P. J.


WILLHITE, J.

17