Filed 10/22/24  Manifest Valley Wellness v. County of Los Angeles CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MANIFEST VALLEY WELLNESS, LLC, | B331056 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCV11265) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Douglas W. Stern, Judge.  Affirmed.

Frost, Christopher Frost, John D. Maatta, Nicholas Brancolini, David Tiraturyan, and Nicholas Lauber for Plaintiff and Appellant.

Collins + Collins, Michael L. Wroniak and Paul A. Breucop for Defendant and Respondent.

_____

Plaintiff and appellant Manifest Valley Wellness, LLC, appeals from a judgment of dismissal entered against it and in favor of defendant and respondent County of Los Angeles (the County) following the County's successful demurrer.[1]

We affirm.

## FACTUAL[2] BACKGROUND

"This is an action about [the County] engaging in an intentional and wrongful course of conduct causing [plaintiff] to sustain very significant damages. [The County's] wrongful conduct was rooted in the wrongful breach and termination of a valid contract entered into with [plaintiff] in retaliation against [plaintiff], because [plaintiff] exercised its First Amendment rights as a whistleblower."

Plaintiff "is an outpatient rehabilitation center providing mental health and drug addiction recovery services to individuals

---

[1] Strangely, plaintiff's opening brief asserts that the trial court committed reversible error "when it sustained the County's demurrer to five of the six causes of action in the complaint without leave to amend." But the brief goes on to address all six causes of action.

[2] "Because this matter comes to us on demurrer, we take the facts from [plaintiff's operative pleading], the allegations of which are deemed true for the limited purpose of determining whether [it] has stated a viable cause of action. [Citation.]" (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885.) Facts appearing in exhibits attached to the complaint are also accepted as true and given precedence over inconsistent allegations in the complaint. (*Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505; *Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447.)

desperately in need of treatment." According to plaintiff, the County "approved, awarded, and entered into a Substance Abuse Prevention and Control ('SAPC') contract, with [plaintiff] whereunder [plaintiff] would provide services to Medi-Cal approved recipients." In fact, various County personnel sent e-mails to plaintiff congratulating it on its SAPC contract and mentioning the onboarding process. Furthermore, in response to correspondence from plaintiff, the County sent two e-mails to plaintiff asking for proof that plaintiff had made its first $125,000 deposit. It is unclear whether plaintiff made that deposit and/or provided proof of that deposit to the County.

In or around November 2021, the parties entered into a master agreement for supportive and/or housing services, which plaintiff alleges is an "interchangeable term[]" for an "SAPC contract/agreement." The master agreement provides, in pertinent part, that "[t]he Contractor [plaintiff here] shall not be entitled to any payment by the County under this Master Agreement except pursuant to validly executed and satisfactorily performed Work Orders." According to plaintiff, the County breached this master agreement by failing to pay plaintiff hundreds of thousands of dollars that it invested to fulfill all of the mandated requirements under the master agreement. Plaintiff also claims that it is entitled to "no less than $50,000 per year" under the terms of the master agreement.

Plaintiff claims that the County disavowed the parties' agreement because it "blew the whistle" on the County's incompetence and dilatory actions, including the County's "inexcusable delay . . . in administering" the contract between plaintiff and the County. Plaintiff contends that its e-mails sent to the County "were effectively the actions of [plaintiff] as a

contractor exercising its First Amendment rights and acting in the capacity of a whistle blower. [Plaintiff] alerted the County that for months the County had been derelict in its duties and obligations and the result of that dereliction was both financial harm to the contractor and the needless loss of life to residents in the County."

"Within only four days, [plaintiff], as a whistleblowing contractor, had been retaliated against and terminated—and the County breached its contract."

## PROCEDURAL BACKGROUND

*Plaintiff's government claim*

After the County denied plaintiff's application for an SAPC contract, it submitted a claim for damages to the County. It summarized the alleged facts and asserted that it had valid claims for breach of contract and fraud in the inducement.

*Initial complaint*

Plaintiff filed its initial complaint on April 1, 2022, alleging six causes of action (breach of contract, breach of implied covenant of good faith and fair dealing, fraud/intentional misrepresentation, fraud/negligent misrepresentation, civil conspiracy, and promissory estoppel). Notably, plaintiff alleges that it entered into an SAPC contract in 2021 with the County, and that the County breached that contract. But, no contract was attached to the pleading. The County demurred. In response, plaintiff amended its pleading and filed a first amended complaint.

*First amended complaint*

The first amended complaint alleged the same six causes of action against the County, reiterating its allegation that it entered into an SAPC contract with the County and that the

4

County breached the SAPC contract.  Again, no contract was attached to the pleading.  The County demurred.  The trial court sustained the demurrer with leave to amend.

*Second amended complaint*

Plaintiff filed its second amended complaint on September 19, 2022, alleging four causes of action (breach of contract, breach of implied-in-fact contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel).  Again, plaintiff alleges that it entered into a valid SAPC contract with the County, which it identifies as a master agreement.  According to plaintiff, the terms "SAPC contract/agreement" and "Master Agreement" are "interchangeable."  The written contract is not attached to the pleading.

Again, the County demurred.

On November 28, 2022, the trial court sustained the County's demurrer with leave to amend.  In so ruling, the trial court stated:  "Plaintiff filed this action after [the County] did not approve its application to be a Drug Medi-Cal Contractor.  [¶] The most basic challenge asserted by [the County] is that there is no allegation of the existence of a contract."  Although plaintiff responded to this argument by claiming that the pleading alleged breach of the master agreement, the trial court was not convinced:  "'*Where's Waldo?*' comes to mind.  Despite a 19-page Second Amended Complaint with more pages of exhibits, the Court cannot find the contract.  It is not attached.  Nor can the Court find allegations of the material terms that are alleged to have been breached.  '*Where's Waldo?*'  Not in this Second Amended Complaint, apparently."

The trial court then systematically went through each cause of action alleged in the second amended complaint.

Regarding the breach of contract cause of action, the trial court found that the pleading did "not plead the contract. Plaintiff fails to set out the actual terms of the alleged contract in the complaint. Nor does Plaintiff attach a copy of the supposed Master Agreement to the [second amended complaint]. Without alleging the substance of the agreement's relative terms, Plaintiff cannot maintain a cause of action for breach of contract." The trial court also found that the "supposed contract" did not "meet[] any of the requirements of Los Angeles County Code section 2.121.380."

Regarding the second and third causes of action, they failed for the same reasons as the first cause of action.

Finally, regarding the fourth cause of action, the trial court found that plaintiff's Government claim did "not state that [p]laintiff [was] seeking to recover based on a claim for promissory estoppel. Plaintiff's failure to comply with this requirement renders its complaint vulnerable to demurrer." Furthermore, plaintiff failed to allege "that there [was] any statute that allow[ed] it to maintain a cause of action for promissory estoppel against [the County]," and there were "no extraordinary circumstances" that would justify such a cause of action.

Despite the foregoing obstacles, the trial court granted plaintiff leave to amend.

*Third amended complaint (TAC)*

On January 5, 2023, plaintiff filed its TAC, the operative pleading. The TAC alleges six causes of action: breach of contract, breach of implied-in-fact contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, violation of 42 United States Code section 1983 (section 1983),

6

and violation of Los Angeles County Code section 5.02.060.[3] Attached to the TAC is a copy of the master agreement "for supportive and/or housing services" between plaintiff and the County.

The TAC alleges that the County breached the master agreement. Furthermore, plaintiff was not required to comply with Los Angeles County Code section 2.121.380 because it is exempt in accordance with Los Angeles County Code section 2.121.250. Specifically, it "has state of the art facilities and well-trained and experienced staff beyond the prevailing norms and standards, and its services are of an extraordinary and technical nature that could not be performed adequately or completely, or satisfactorily by County personnel." Plaintiff allegedly suffered damages, including a "projected [loss of] a significant amount of revenues and profits."

Plaintiff further alleged that it had a valid implied contract with the County "[b]ased upon the acts and conduct of the parties, and the surrounding circumstances." Furthermore, "[t]here is no requirement that the implied in fact contract needs to comply with County Code Section 2.121.380." In fact, plaintiff "stood in compliance under the exceptions set forth in Los Angeles County Code of Ordinances Section 2.121.150 because [plaintiff] has state of the art facilities and well-trained and experienced staff beyond the prevailing norms and standards, and its services are of an extraordinary and technical nature that

---

[3]     Los Angeles County Code section 5.02.060 prohibits "[r]etaliation for reporting fraud, waste or misuse of county resources." (L.A. County Code, § 5.02.060.)

7

could not be performed adequately or completely, or satisfactorily by County personnel."

Similar allegations form the basis of plaintiff's claim for promissory estoppel.

In addition, plaintiff alleged that the County breached the implied covenant of good faith and fair dealing by breaching the parties' agreement in retaliation against plaintiff for being a whistleblower. As a result of the County's wrongful conduct, plaintiff "was harmed because it immediately lost its ability to serve Medi-Cal patients and is projected to lose a significant amount of revenue and profits."

Plaintiff's section 1983 claim is based upon the alleged deprivation of its First amendment right "to express its concern on matters of public importance under the First Amendment," namely its report of the County's alleged "wrongful inactivity . . . that was leading to the needless death of individuals in the County."

Finally, plaintiff claimed that the County's act of retaliation (terminating the master agreement) violated Los Angeles County Code section 5.020.060.

*The County's demurrer; plaintiff's opposition*

Again, the County demurred, and plaintiff opposed the demurrer.

*Trial court order sustaining the demurrer without leave to amend*

On March 8, 2023, the trial court sustained the County's demurrer without leave to amend. It specifically addressed each cause of action as set forth below:

First cause of action (breach of contract)

"This time around, Plaintiff's TAC includes a copy of the alleged Master Agreement between Plaintiff and [the

8

County]. . . .  [¶]  . . .  [T]he critical text of the Master Agreement [provides]:  [¶]  'The Contractor shall not be entitled to any payment by the County under this Master Agreement except pursuant to validly executed and satisfactorily performed Work Orders.'  [Citation.]  [¶]  Plaintiff has not pled the existence of any Work Orders from the County.  Without a Work Order, Plaintiff is not entitled to the payment that it is claiming, and therefore, cannot maintain a cause of action for breach of contract."

In addition, "[i]t is also of note that previously, Plaintiff did not allege that the supposed contract met any of the requirements of Los Angeles County Code section 2.121.380. Contracts between the County and private businesses to perform personal services must comply with the prerequisites of this code for a valid contract to exist.  [Now, however,] Plaintiff is claiming that this section does not apply to it.  Plaintiff's reasons for making this claim are unclear, beyond its claim that it could more adequately perform the services than the County, though Plaintiff does not provide any facts to back up this assertion beyond saying that it has state of the art facilities and well-trained staff."

Second cause of action (breach of implied-in-fact contract)

"The concept of an Implied-in-Fact Contract is contrary to County Code section 2.121.380, which requires the Board of Supervisors to issue a written statement attesting to compliance with that County Code section before a contract may be approved.

"Plaintiff has not pled any facts showing that the alleged implied-in-fact contract would comply with County Code section 2.121.380.  As was the case with the prior cause of action, Plaintiff simply states that it does not need to comply with that

9

section.  Additionally, Plaintiff claims that [the County] failed to pay Plaintiff an amount to be proven at trial.  However, as was the case with Plaintiff's breach of contract claim, Plaintiff is not owed anything unless there was a Work Order, which Plaintiff has not pled exists."

Third cause of action (breach of the implied covenant of good faith and fair dealing)

This cause of action failed because plaintiff did not "adequately ple[a]d that [the County] failed to perform pursuant to the terms of the alleged contract."

Fourth cause of action (promissory estoppel)

This cause of action "fail[ed] because Plaintiff has failed to state a claim by failing to file a government claim for promissory estoppel, failing to plead any statute that would permit Plaintiff to sue [the County] for promissory estoppel, and by failing to plead extraordinary circumstances to justify promissory estoppel."

Fifth cause of action (violation of 42 U.S.C. § 1983)

"The speech that Plaintiff claims was suppressed was an email sent by Plaintiff's representative to someone in the County.  Plaintiff claims that the alleged contract was terminated shortly after it sent this email and that this was retaliation for the email that Plaintiff sent.  Plaintiff has not shown that the County has a policy or custom that causes constitutional injury."

Sixth cause of action (violation of Los Angeles County Code § 5.02.060)

"Nothing in Plaintiff's Government Claim . . . would have put the County on notice that Plaintiff planned to sue the County based on a violation of this Section.  Nor has Plaintiff provided

any authority that would allow it to sue the County for a violation of this Section."

*Judgment and appeal*

Judgment was entered, and plaintiff's timely appeal ensued.

## DISCUSSION

I. *Standard of review*

"Our Supreme Court has set forth the standard of review for ruling on a demurrer dismissal as follows: 'On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed "if any one of the several grounds of demurrer is well taken. [Citations.]" [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]' [Citations.]" (*Payne v. National Collection Systems, Inc.* (2001) 91 Cal.App.4th 1037, 1043–1044.)

II. *The trial court properly sustained the County's demurrer*

   A. <u>First cause of action (breach of written contract)</u>

      1. *Relevant law*

"A breach of contract claim has four elements—namely, '(1) the existence of [a] contract, (2) plaintiff's performance or

11

excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.' [Citation.]" (*Piedmont Capital Management, L.L.C. v. McElfish* (2023) 94 Cal.App.5th 961, 968.) A breach of contract claim fails if the plaintiff does not establish the existence of an agreement to pay. (*Archer v. Coinbase, Inc.* (2020) 53 Cal.App.5th 266, 272.)

"For purposes of a demurrer, we accept as true both facts alleged in the text of the complaint and facts appearing in exhibits attached to it. If the facts appearing in the attached exhibit contradict those expressly pleaded, those in the exhibit are given precedence. [Citation.]" (*Mead v. Sanwa Bank California* (1998) 61 Cal.App.4th 561, 567–568; see also *Moran v. Prime Healthcare Management, Inc.* (2016) 3 Cal.App.5th 1131, 1145–1146.)

2. *Analysis*

Applying these legal principles, the trial court did not err in sustaining the County's demurrer. Assuming without deciding that the master agreement was an SAPC contract, plaintiff has not alleged that the County breached that agreement. As set forth above, the master agreement plainly provides that plaintiff is not entitled to payment "except pursuant to validly executed and satisfactorily performed Work Orders." But plaintiff admits in the TAC that the County never issued any such work order. And plaintiff directs us to no provision in the master agreement that the County was required to issue work orders and/or that the County breached the master agreement by failing to issue any work orders in the first place.

In addition, plaintiff fails to allege compliance with the County Code. "'Certain general principles have become well established with respect to municipal contracts . . . . It is

12

. . . settled that the mode of contracting, as prescribed by the municipal charter, is the measure of the power to contract; and a contract made in disregard of the prescribed mode is unenforceable.' [Citation.]" (*Katsura v. City of San Buenaventura* (2007) 155 Cal.App.4th 104, 108–109.) Los Angeles County Code section 2.121.380 provides, in relevant part, that "[n]o contract may be awarded" unless six requirements are met. (L.A. County Code, § 2.121.380(A).) And plaintiff has not alleged, and apparently cannot allege, that these requirements have been met.

Urging us to reverse, plaintiff contends that it was not required to comply with Los Angeles County Code section 2.121.380. Certainly Los Angeles County Code section 2.121.250 provides exceptions to Los Angeles County Code section 2.121.380. But beyond its bald assertion that it has "state of the art facilities and well-trained and experienced staff beyond the prevailing norms and standards," plaintiff does not allege all of the requisite elements of the exceptions to Los Angeles County Code section 2.121.380. It does not, for example, allege that "it is impossible to recruit such personnel to perform such service for the period of time such service is needed by the county" and that the "services are of a temporary nature." (L.A. County Code, § 2.121.250(B)(2) & (3).) Absent these essential allegations, plaintiff's claim fails.

B. <u>Second cause of action (breach of implied-in-fact contract)</u>

1. *Relevant law*

"'A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied

from the promisor's conduct.' [Citations.]" (*Aton Center, Inc. v. United Healthcare Insurance Co.* (2023) 93 Cal.App.5th 1214, 1230.)

A "'county may be bound by an implied contract under California law if there is no legislative prohibition against such arrangements, such as a statute or ordinance.' [Citations.]" (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 439.)[4]

2. *Analysis*

It is unclear what the terms of the alleged implied agreement are. To the extent they mirror those set forth in the master agreement, for the same reasons set forth in connection with its breach of contract claim, plaintiff's claim for breach of implied contract fails.

C. Third cause of action (breach of the implied covenant of good faith and fair dealing)

Because plaintiff's third cause of action for breach of the implied covenant "relies on the same acts, and seeks the same damages, as its claim for breach of contract," it fails for the same reasons set forth above. (*Bionghi v. Metropolitan Water Dist.* (1999) 70 Cal.App.4th 1358, 1370.)

Urging us to conclude otherwise, plaintiff asserts that it alleges more than just breach of contract—it alleges that the

_____

[4]	In its respondent's brief, the County cites *Daneshmand v. City of San Juan Capistrano* (2021) 60 Cal.App.5th 923, 927 for the proposition that a municipal entity cannot agree to an implied contract or implied contract terms. But *Daneshmand* made that statement without citation to legal authority and without any analysis.

14

County breached the implied covenant by terminating the contract in retaliation against purported "whistleblow[ing]."  Be that as it may, plaintiff's claim still cannot withstand demurrer.  As set forth above, plaintiff was allegedly damaged "because it immediately lost its ability to serve Medi-Cal patients and is projected to lose a significant amount of revenue and profits."  Those damages are the same as those sought for breach of contract.  (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1395.)

D.  <u>Fourth cause of action (promissory estoppel)</u>

"In California, all government tort liability must be based on statute."  (*Becerra v. County of Santa Cruz* (1998) 68 Cal.App.4th 1450, 1457; see also *Cochran v. Herzog Engraving Co.* (1984) 155 Cal.App.3d 405, 409 ["sovereign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute"].)  Here, the TAC does not allege that there is any statute that allows it to maintain a cause of action for promissory estoppel.  As such, the claim fails.[5]

---

[5]  We reject the County's assertion that plaintiff failed to submit a proper claim for damages.  (See *Branciforte Heights, LLC v. City of Santa Cruz* (2006) 138 Cal.App.4th 914, 929; *Gong v. City of Rosemead* (2014) 226 Cal.App.4th 363, 374.)  Assuming without deciding that plaintiff's claim was defective, it substantially complied with the requirements of the Tort Claims Act.  (*Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1083; *Olson v. Manhattan Beach Unified School Dist.* (2017) 17 Cal.App.5th 1052, 1060; *Connelly v. County of Fresno* (2006) 146 Cal.App.4th 29, 39.)  After all, the government claim mentions breach of contract and fraud-based causes of action.

15

Urging us to reverse, plaintiff contends that it alleged "'exceptional circumstances' which prevented [it] from treating patients during a mental health crisis." Under these exceptional circumstances, plaintiff theorizes that the County should be held to answer its claim for promissory estoppel.

"It is well established that 'an estoppel will not be applied against the government if to do so would effectively nullify "a strong rule of policy, adopted for the benefit of the public . . . ."' [Citations.] '"The courts of this state have been careful to apply the rules of estoppel against a public agency only in those special cases where the interests of justice clearly require it."' [Citation.] The '"facts upon which such an estoppel must rest go beyond the ordinary principles of estoppel and each case must be examined carefully and rigidly to be sure that a precedent is not established through which, by favoritism or otherwise, the public interest may be mulcted or public policy defeated."' [Citation.]" (*Poway Royal Mobilehome Owners Assn. v. City of Poway* (2007) 149 Cal.App.4th 1460, 1471 (*Poway*); see also *Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250, 1262 [doctrine does not apply against a governmental body except in unusual circumstances to avoid grave injustice and when the result will not defeat a strong public policy].)

"Numerous cases hold promissory estoppel may not be raised against a public entity when it would defeat the public policy of requiring adherence to statutory procedures for entering into contracts. [Citations.] The 'doctrine of estoppel is not available to "'defeat the effective operation of a policy adopted to protect the public.'"' [Citation.]" (*Poway*, *supra*, 149 Cal.App.4th at p. 1476.)

16

With these principles in mind, we agree with the trial court that plaintiff did not allege exceptional circumstances that allow plaintiff's claim for promissory estoppel to survive demurrer. In the TAC, plaintiff alleges that the County promised plaintiff that the parties had entered into a valid contract (the SAPC). Based on the County's promises, plaintiff "suffered substantial detriments," including inducing plaintiff "to spend substantial amounts of money in preparing to perform under the contract." These allegations do not constitute "exceptional circumstances"; all they do is reiterate plaintiff's claim that it is entitled to payment for serving Medi-Cal patients. There is no allegation, for example, "that thousands of people relied on the County's statements to [plaintiff] such that promissory estoppel might resolve the legal disputes of thousands of people."

In fact, to allow plaintiff to proceed on a theory of promissory estoppel would undermine the strong public policy regarding procedures for how the County enters into contracts. (See, e.g., L.A. County Code, §§ 2.121.380(B) ["In making a recommendation to the board of supervisors for the award of a contract, the department recommending the award shall state in writing that the requirements of this section have been met"], 2.121.390 [mandating that certain findings be made in writing], 2.121.420 [same]; *G.L. Mezzetta v. City of American Canyon* (2000) 78 Cal.App.4th 1087, 1093–1094.) These procedures protect the public and cannot be set aside because plaintiff is disappointed that it was not awarded a contract it mistakenly believed that it had earned.

E. Fifth cause of action (violation of § 1983)

Local governmental entities can only be liable for violation of section 1983 "when an official policy or custom [led] to the

17

violation of a federally secured civil right." (*Pierce v. San Mateo County Sheriff's Dept.* (2014) 232 Cal.App.4th 995, 1007; see also *Harman v. City and County of San Francisco* (2006) 136 Cal.App.4th 1279, 1296; *Monell v. Department of Social Services* (1978) 436 U.S. 658, 690–691.) Establishing a custom for purposes of section 1983 requires significant proof that the alleged custom is well-settled and permanent as to constitute the force of law. (*Harman, supra*, 136 Cal.App.4th at p. 1302.)

"Generally, a party may demonstrate municipal responsibility for a constitutional violation in one of three ways. First, a plaintiff might show that an entity with decision-making authority within the municipality expressly enacted or authorized the policy that led to the injury. [Citations.] Second, a plaintiff might prove that the municipality caused the injury by showing the violation was the result of municipal custom. [Citation.] Finally, a plaintiff might show that the constitutional violation is the product of inadequate training on the part of the municipality. [Citation.]" (*Ramirez v. Las Vegas Metropolitan Police Dept.* (9th Cir. 2001) 22 Fed.Appx. 828, 830.)

Here, the TAC does not set forth a policy or custom that led to plaintiff's alleged constitutional injury. It follows that plaintiff's claim for violation of section 1983 fails.

F. Sixth cause of action (retaliation/violation of Los Angeles County Code section 5.02.060)

1. *Failure to submit a proper government claim*

We agree with the trial court that plaintiff's government claim was insufficient. (*Gong v. City of Rosemead, supra*, 226 Cal.App.4th at p. 374.) While the claim details the alleged breach of contract and fraud, it says nothing of alleged retaliation for whistleblowing. Based upon the allegations of the lengthy

18

government claim, the County would not have been put on notice that plaintiff would be pursuing a claim for retaliation.  (*Connelly v. County of Fresno, supra*, 146 Cal.App.4th at p. 39.)

       2.  *Failure to provide authority that would allow it to sue the County for a violation of Los Angeles County Code section 5.02.060*

We agree with the court in *Mueller v. County of Los Angeles* (2009) 176 Cal.App.4th 809, 821 that "plaintiff is precluded from pursuing a cause of action under Los Angeles County Code section 5.02.060."

"A violation of a state statute does not necessarily give rise to a private cause of action.  [Citation.]  Instead, whether a party has a right to sue depends on whether the Legislature has 'manifested an intent to create such a private cause of action' under the statute.  [Citations.]  Such legislative intent, if any, is revealed through the language of the statute and its legislative history.  [Citation.]" (*Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 596.)  We presume the same principles apply to private causes of action for alleged violations of county codes.

Here, plaintiff directs us to nothing that suggests the County intended to allow a private cause of action for violation of this provision of its Code.

III.  *The trial court properly denied plaintiff leave to amend*

We further conclude that the trial court did not abuse its discretion in denying plaintiff leave to amend.  Plaintiff has been given four opportunities to plead a proper action against the County and has been unable to do so.  Further, it has not demonstrated that it can amend its pleading yet again to state a proper cause of action against the County.  In fact, it does not even request leave to amend on appeal; rather, all plaintiff

19

requests is that we reverse the judgment against it.  Under these circumstances, plaintiff has not shown that the trial court abused its discretion in denying it leave to amend.

## DISPOSITION

The judgment is affirmed.  The County is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT